## PERSONAL FINANCE AND THRIFT CORPORATION, RESPONDENT, v. LASSER MOTOR CORPORATION, IMPLEADED, ETC., APPELLANT.

Argued January 21, 1932—Decided May 9, 1932.

Before GUMMERE, CHIEF JUSTICE, and Justices PARKER and CASE.

For the appellant, *Herbert R. Baer.*

For the respondent, *Milton M. Unger* (*Leonard J. Emmerglick,* on the brief).

PER CURIAM.

In an action tried in the Essex Circuit Court before Judge Smith without a jury, he awarded judgment in favor of the plaintiff-respondent and against the defendant-appellant in the sum of $4,500 and costs. That amount was concededly the balance unpaid on a so-called "collateral note" for $5,000

dated January 13th, 1931, held by plaintiff, and on which it had actually advanced in cash $4,727.50, the difference being discount charges and some petty items not now drawn into question. The note purports to have been executed by defendant corporation as a joint and several maker, and the vital question in the case is whether the corporation is bound by the signature affixed in its name by Jacob Lasser, who was then its president: or to put it in another way, whether Jacob was invested with a general agency by a course of dealings: or was held out as agent by the corporation so that it is estopped to deny his agency: or was formally authorized to execute the note in its name. If any one of these questions was resolved against the defendant by the trial judge on legal evidence before him, he committed no error in refusing to nonsuit: or in directing a judgment for plaintiff. There are ten grounds of appeal, but these are the only ones that are argued. A third point made in the brief is that "the trial court erred in failing to recognize the corporate entity Lasser Motor Corporation," but as no particular ruling seems to be attacked under this point we assume it to be an argument in support of the other two.

The note bears the signatures of the following as joint and several makers: 1. Jacob Lasser. 2. (Blank for his wife who did not sign.) 3. Sydney Lasser. 4. Sarah, a widow. 5. "Lasser Motor Corporation, Jac. Lasser, Pres." This last is the disputed signature. There was a default judgment against the three individual defendants, who of course are not parties to this appeal.

It is fairly clear that the Lasser Motor Corporation was one of many "paper" corporations organized largely for ulterior reasons familiar to most lawyers and business men. That fact, which the court was entitled to find and doubtless did find, is of course not controlling but is a circumstance bearing on the question of agency. Jacob Lasser was the president and in effect sole owner; he had organized it to continue an automobile business previously conducted by him. His brother, Harold, a young lawyer, was brought in as a director and secretary-treasurer, and William S. Myers, another young lawyer, as the third director and for a time

secretary. Myers did not testify: but Harold Lasser testified that ordinarily there were no formal meetings, that Jacob ran the business alone and attended to all matters connected therewith, sometimes consulting Harold informally and obtaining his oral consent to proposed action; that Myers had no financial interest in the corporation; that Jacob told him of the proposed loan on this note and that he assented. Jacob testified that he himself signed checks, borrowed money and made contracts for the company, was in charge, and "was the whole company." The fourfold written application for the loan, which is voluminous and on blanks issued by the plaintiff, shows one application signed by Jacob Lasser, trade name Lasser Motor Corporation—incorporated—president and sole owner of the business; another by Sydney Lasser as "co-maker;" a third by Sarah, widow, mother of Jacob, as "co-maker," and a "confidential statement" of Lasser Motor Corporation showing assets and liabilities, and signed by Jacob as president. The plaintiff's checks for the loan are in evidence and the endorsements show that though they were drawn to the order of Jacob, they were endorsed by him and banked by the defendant corporation. It is conceded that the proceeds of these checks went into the company treasury, but the claim is that Jacob owed that money to the corporation and that he borrowed it of the plaintiff and applied the proceeds of the loan to his debit balance on the defendant company's books; but Jacob denied this and claimed that the ledger page bearing his name and showing a debit balance was spurious, and that he owed nothing to the company at the time. This of course raised a question of fact for the trial judge, whose finding thereon is conclusive on us. If he believed Jacob, the result would be that the proceeds of the loan went to the appellant, and that, apart from the fact that it was bound by law to repay the loan, is an additional circumstance pointing to authority in Jacob to sign the note.

Much of the argument resolved about the admitted alteration of a paper purporting to be a certified copy of a resolution of the appellant company authorizing "the president or vice-president *and* the treasurer, secretary or assistant-secretary" to "endorse" a note for $5,000 given by Lasser Motor

Corporation to (plaintiff) "for the benefit of the above named corporation." The testimony indicates that Murdock, manager of plaintiff, construed this as calling for signature both by the president and the treasurer or secretary, and required the "and" which we have italicized to be changed to "or," which was done by Lasser in his presence. We make little or nothing of this paper. It was mandacious, as no such resolution had ever been passed, and no meeting held as therein recited. From the appearance of the facsimile before us it seems likely that the typewritten or mimeographed form was furnished by the plaintiff and the blanks filled in with the desired words and figures to meet the situation. But all this is beside the mark, as the judge put his decision on two main grounds, one of which was that the directors by a course of dealing held out Jacob as an agent of the company to conduct its financial transactions including the borrowing of money and execution of notes.

The defense for the company was interposed, not by the Lassers, but by a man named Rosengarten, who had bought into the defendant company after the note had been made, and for whom it was claimed that he had been defrauded by a financial statement used as a basis for his purchase and which made no mention of the plaintiff's claim on the note. But here, again, there is a contradiction on the facts. The statement does show among the liabilities an item, "Sarah Lasser loan, $4,500," which Jacob testified was the same as the claim of the plaintiff, she having "endorsed" the note; and it is a corroborating circumstance that the books of the company show a payment of the first monthly installment of $500 to the plaintiff.

The conclusion of the whole matter seems to be that there was evidence to support a finding of fact by the trial judge that Jacob had been authorized by a course of practice to act as general financial agent of the defendant, and that the judge so found. Such finding, as we have said, is conclusive on us; and the judgment is accordingly affirmed.